SKAPIK LAW GROUP
Mark J. Skapik (SBN 164957)
Geralyn L. Skapik (SBN 145055)
Blair J. Berkley (SBN 222293)
Matthew T. Falkenstein (SBN 333302)
Eric C. Morris (SBN 243425)
5861 Pine Avenue, Suite A-1
Chino Hills, California 91709
Telephone: (909) 398-4404
Facsimile: (909) 398-1883

Attorneys for Plaintiff
JENNIFER BERG

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER BERG, an individual<br><br>       Plaintiff,<br><br>    vs.<br><br>LOMA LINDA UNIVERSITY MEDICAL CENTER; HI-DESERT MEDICAL CENTER; and DOES, 1 through 10, inclusive;<br><br>       Defendants. | Case No.: 5:21-cv-01474-FMO-KK<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. Emergency Medical Treatment & Labor Act Violation for Failure to Perform an Emergency Medical Screening and Disparate Medical Screening (42 U.S.C. 1395DD);<br>2. Failure to Provide Emergency Medical Care and Disparate Care in Violation of California Health and Safety Code § 1317 et seq.;<br>3. Professional Negligence<br>4. Negligent Infliction of Emotional Distress;<br>5. Negligence;<br>6. Negligence Per Se;<br>7. Tortious Interference With Right to Dispose of Remains;<br>8. Tortious Interference With Dead Body; and<br>9. Breach of Fiduciary Duty.<br><br><u>ASSIGNED FOR ALL PURPOSES TO:</u><br>Hon. Judge Fernando M. Olguin<br><br>Complaint Filed:     August 30, 2021<br><br>**DEMAND FOR JURY TRIAL** |

PLAINTIFF JENNIFER BERG ("Plaintiff") alleges as follows:

## JURISDICTION AND VENUE

1.      Because this action arises under the laws of the United States, including the Emergency Medical Treatment & Labor Act (42 U.S.C. § 1395dd) ("EMTALA"), the Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. Since the same events and omissions that form the basis for Plaintiff's federal claims also form the basis for Plaintiff's state law claims, this Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

2.      As a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Central District of California, under 28 U.S.C. § 1391, the Central District of California is a proper venue for Plaintiff's claims.

## GENERAL ALLEGATIONS

3.      Plaintiff JENNIFER BERG ("Plaintiff" or "Ms. Berg" or "Jennifer") is a resident of the State of California in the County of San Bernardino, and who was pregnant until June 6, 2020, at which time she learned that her child had died in the womb. Ms. Berg files this action against LOMA LINDA UNIVERSITY MEDICAL CENTER; HI-DESERT MEDICAL CENTER; and DOES, 1 through 10, for violation of federal and state laws. Defendants' conduct caused the death of Ms. Berg's baby, which otherwise was healthy and would have been delivered alive.

4.      Furthermore, on information and belief, Defendants subjected Ms. Berg to extreme and outrageous conduct of willfully refusing to provide the treatment required to save Ms. Berg's child. Defendant LOMA LINDA UNIVERSITY MEDICAL CENTER ("LOMA LINDA") and HI-DESERT MEDICAL CENTER ("HI-DESERT") and its agents and/or employees willfully deprived Ms. Berg of the treatment requested for hours which resulted in increased harm.

5.      Further, on information and belief, Defendants LOMA LINDA and HI-DESERT failed to properly supervise and train their employees and agents to effectively treat Ms. Berg and those in similar situations in violation of federal and state law.

6.    This incident occurred in substantial part because Defendants LOMA LINDA and HI-DESERT do not provide their employees and agents adequate training and resources to serve people who are experiencing high-risk pregnancies. Ms. Berg's injuries were, in part, the result of Defendants LOMA LINDA and HI-DESERT's failure to adopt, implement, and audit ongoing compliance policies and procedures to ensure that individuals with high-risk pregnancies are provided with effective critical emergency healthcare services.

7.    Ms. Berg, who had a high-risk pregnancy during the months leading up to and on June 6, 2020, alleges that Defendants failed to take appropriate steps to care for her throughout the course of her triage, emergency room visit, and in-patient care. She was not provided appropriate care which resulted in the death of her child.

8.    Thereafter, LOMA LINDA engaged in a course of unlawful conduct which permitted and ratified the mishandling and mistreatment of Ms. Berg baby's human remains in such a manner as to be offensive to the ordinary person and in violation of industry standards.

## PARTIES

9.     Ms. Berg is an adult qualified to bring this action. Ms. Berg was pregnant until about June 6, 2020, when she discovered that her child had perished in the womb. Ms. Berg is, and at all times relevant herein, was a California resident.

10.    On information and belief, Defendant LOMA LINDA UNIVERSITY MEDICAL CENTER ("LOMA LINDA") is a Section 501(c)(3) organization owned and operated by the General Conference of Seventh-day Adventists with its principal place of business located at 11234 Anderson St., Loma Linda, CA 92354. Defendant LOMA LINDA is liable and responsible for the acts and omissions of all of its agents and employees, including, but not limited to all of the individuals named as Defendants in this complaint who are employees of Defendant LOMA LINDA, under multiple legal doctrines including, but not limited to, Respondeat Superior and actual or ostensible authority.

11.    On information and belief, Defendant HI-DESERT MEDICAL CENTER ("HI-DESERT") is a hospital under the laws of the State of California, having its principal place of business at 6601 White Feather Road, Joshua Tree, CA 92252. Defendant HI-DESERT is responsible for the acts and omissions of all of its agents and employees under multiple legal doctrines including, but not limited to, Respondeat Superior and actual or ostensible authority.

12.    Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sue said defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were caused in whole or in part by their conduct.

13.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the defendants was acting as an agent, servant, employee, partner, joint venture or associate of each of the remaining defendants and, in doing the acts and things herein mentioned, was acting within the course and scope of such agency, servitude, employment, partnership, alter ego, joint venture or association, and was acting with the authority, permission, consent and ratification of each of the other defendants.

## STATEMENT OF FACTS

14.    JENNIFER BERG became pregnant in late 2019 and her scheduled due date was June 6, 2020.

15.    Plaintiff is informed and believes that her pregnancy was deemed "high risk."

16.    Due to the high risk associated with Ms. Berg's pregnancy, she was and is unusually and especially susceptible to severe emotional distress caused by pregnancy complications.

17.    On June 4, 2020, Ms. Berg had visited Defendant SAC HEALTH with complaints related to her pregnancy.

18.    On June 6, 2020, Ms. Berg visited Defendant HI-DESERT with complaints of decreased fetal movement and contractions.  Ms. Berg was admitted to the HI-DESERT emergency room, whereby the nurse notified Ms. Berg that she discovered the fetal heartrate with the monitor, and notified her it was rapidly fluctuating. Upon information and belief, HI-DESERT failed to order or document an OB/GYN consultation for Ms. Berg. After a long delay, a doctor arrived bedside, and the nurse notified the doctor of the rapid fetal heartrate. Ms. Berg demanded a c-section to immediately deliver her baby. The doctor responded "No." The doctor ordered a formal bedside ultrasound and left the room. While waiting an extended period of time, there were no nurses or doctors monitoring Ms. Berg.  The doctor was in the hallway and could be overheard laughing and gossiping with the nurses and staff.

19.    After a long delay, a bedside ultrasound technician arrived in the room and performed the ultrasound upon Ms. Berg.  The doctor entered the room and notified Ms. Berg that HI-DESERT is not equipped to handle her case and then directed Ms. Berg to drive herself to Loma Linda University Medical Center. Then the doctor stated to Ms. Berg, "sorry for your loss," and immediately exited the room.

20.    Plaintiff is informed and believes, and thereon alleges that Defendant HI-DESERT is located approximately 73 miles from Defendant LOMA LINDA, and that it takes approximately an hour and a half to travel from Defendant HI-DESERT to Defendant LOMA LINDA.

21.    Upon arrival at the facilities of Defendant LOMA LINDA, Ms. Berg was forced to wait for over an hour before being seen, all while suffering in fear for the life of her unborn baby.

22.    When Ms. Berg was finally seen by a doctor at Defendant LOMA LINDA, where she was formally informed that her unborn baby had died.

23.     Ms. Berg's baby was born on June 7, 2020. Ms. Berg held her baby for approximately ten minutes before her baby was taken away by the delivery nurse for 30-40 minutes. Ms. Berg was not given a reason for why her daughter was taken away for so long.

24.     Ms. Berg was accompanied by her husband (Christopher Reed), sister (Tabitha Vanderheyden) and mother. Ms. Vanderheyden realized the baby had been gone for an extended period of time, so Ms. Berg and Ms. Vanderheyden urged the delivery nurse to bring her baby back for more skin-to-skin contact time.

25.     The nurse brought Ms. Berg's baby back in the delivery room for skin-to-skin contact with Mr. Reed and Ms. Berg.  The baby was swaddled.  Ms. Vanderheyden noticed a skin abrasion on the baby's upper left shoulder, which was a deep cut about 1-2 inches long.  Ms. Berg had noticed discoloration in the same area as the abrasion prior to her baby being taken away the first time, but noted that it was only discoloration on the surface of the skin and when the nurse brought the baby back, the cut was deeper.

26.     The doctor requested for Ms. Berg to visit the Chaplain downstairs for prayer and comfort. The delivery nurse wheeled Ms. Berg in a wheelchair down to the Chaplain. The nurse introduced Ms. Berg to the Chaplain, who stated that she needed to get important paperwork for Ms. Berg to fill out. The Chaplain notified Ms. Berg that she would meet with her in the delivery room in fifteen minutes. In the delivery room, the Chaplain asked Ms. Berg if she was religious and offered prayer. The Chaplain demanded that Ms. Berg donate her daughter's organs to save other's lives and said, "Organ donation is what God would want."  Ms. Berg notified the Chaplain that she was not religious and is against organ donation. The Chaplain was noticeably upset and pleaded with Ms. Berg to consent to organ donation. The Chaplain notified Ms. Berg that, "a cremation would be such a waste of a baby's organs." Ms. Berg declined organ donation.

27.     The Chaplain left the room and spoke with the delivery doctor in the hallway.  The delivery doctor returned to the room and asked Ms. Berg and Mr. Reed

FIRST AMENDED COMPLAINT

whether they would reconsider and consent to donate their baby's organs to save other's lives. The delivery doctor stated to Ms. Berg, "You know how many people you could help with that? Don't you think Lucy [Ms. Berg's baby] would want that? If you change your mind, you have to let me know soon."

28.    Ms. Berg requested for her delivery doctor to provide her with her with her baby's placenta. The delivery doctor declined and notified Ms. Berg that LOMA LINDA's is prohibited from releasing the placenta to the mother.

29.    The delivery doctor left the room and spoke with the nurse in the hallway. The delivery nurse returned to the room and asked Ms. Berg and Mr. Reed whether they would reconsider and consent to donate their baby's organs.  The delivery nurse was initially conversational, asking what post-life plans the family had for their daughter. Then the delivery nurse said, "You are going to donate her organs too?" Ms. Berg and her husband repeated that they had no intention of donating their baby's organs.

30.    The nurse notified Ms. Berg and her husband that they were required to use the mortuary LOMA LINDA selected for them because of COVID-19 regulations. Ms. Berg asked the nurse if she could select a third-party mortuary and the  nurse declined.

31.    The nurse provided Ms. Berg with the contact information to Cortner Chapel. Ms. Berg contacted Cortner Chapel and spoke with Ms. Evie Ramirez and contracted for services. Over the next several weeks, Ms. Evie Ramirez notified Ms. Berg that Cortner Chapel had made multiple calls to LOMA LINDA to collect the baby's body but LOMA LINDA refused to release the body.  Cortner Chapel sent their transport van to LOMA LINDA on three different occasions and waited for delivery of Ms. Berg's baby, however on each occasion, LOMA LINDA declined to release the baby and refused to provide an explanation. Approximately 30 days post-delivery, LOMA LINDA finally released Ms. Berg's baby to Cortner Chapel. Ms. Ramirez called Ms. Berg and informed her that her baby was in their possession. Ms. Berg reminded Ms. Ramirez that she would like to have her baby's handprints and footprints. Ms. Ramirez responded, "I

will do what I can. Unfortunately, she came to us in pieces. Her hands are severed and her feet are severed."

32.     Plaintiff is informed and believes and thereon alleges that LOMA LINDA engaged in the practice of dismembering Ms. Berg's baby's human remains with conscious disregard for the rights of, promises made to, and fiduciary responsibilities owed to Ms. Berg.

33.     Each Defendant assumed a duty to Plaintiff to handle the human remains entrusted to them in a dignified and respectful manner consistent with legitimate custom and practice.  Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each defendant was the agent and employee of each of the remaining defendants, and in doing the things herein alleged was acting within the course and scope of such agency and employment. Each defendant has ratified and approved the acts of their respective agents and employees

34.     Before delivery of plaintiff's baby, Ms. Berg's treating doctor, treating nurse and LOMA LINDA Chaplain independently approached plaintiff and her husband, Christopher Reed, about the possibility of donating plaintiff's baby's organs and other body parts. Plaintiff and her husband verbally communicated to the treating doctor, treating nurse and LOMA LINDA Chaplain that they did not want their daughter's organs or body parts removed or donated and wished to receive their daughter's body intact. Plaintiff and husband made clear to LOMA LINDA and its agents that Plaintiff and husband objected to taking to the removal of their baby's organs or body parts, and wanted to preserve the body. At no point did Plaintiff or her husband or their family consent to organ removal.

35.     LOMA LINDA and its agents were aware that Plaintiff and her husband objected to the removal and donation of their organs and tissue. Knowing this, Defendants determined to accept some of Plaintiff's daughter's organs and tissue as an anatomical gift without obtaining full and proper legal authorization to do so, knowing that accepting such an anatomical gift, necessarily involving intrusion of Plaintiff's body

and her baby's body, without Plaintiff or her husband's legal authorization, would result in severe emotional distress.

36.    At all relevant times, Defendants knew or should have known that Plaintiff and her husband were the persons designated by law as having the legal right to determine the disposition and burial of their daughter's human remains. (California Health and Safety Code§ 7100.) Plaintiff and her husband had never signed any instructions or verbally consented to donation of their daughter's organs after death. Defendants knew or should have known that Plaintiff's baby's body parts and organs could not be removed and donated after death without the consent of both of her parents. (California Health & Safety Code § 7150.40). By reason of the Parent/Child relationship of mother, father and daughter, Plaintiff and her husband were at all times entitled to determine the proper disposition of their daughter's remains.

37.    Under both Federal and California State law, Defendants had a duty to ask for  and obtain legal authorization from Plaintiff before allowing or participating in the removal of any of Plaintiff's baby's organs or tissue for the purpose of donation or research.

38.    Defendant LOMA LINDA is a participating Medicare hospital. As such, LOMA LINDA is required to comply with the provisions of 42 U.S.C. Section 1320b-8, including having written protocols for the identification of potential organ donors which 1) assure that family members of potential organ donors are made aware of the option of organ or tissue donation and their right to decline; and 2) encourage discretion and sensitivity with respect to the circumstances, views, and beliefs of such families. As a result, LOMA LINDA had a duty to inform Plaintiff of her option to decline to donate her daughter's organs and tissue before there could be a legal authorization to make such a gift.

39.    Under California Health and Safety Code Section 7150.40, Plaintiff mother, and father together, were the decision makers as to whether to donate a gift of their daughter's organs or tissue. Both were reasonably available to Defendants for purpose of

determining if Plaintiff and father would both agree to such a donation or gift. If either Defendant or their agents were aware of an objection to making such a gift by either Plaintiff or father, Defendants owed a duty to Plaintiff under California Health and Safety Code Sections 7140(b) and 7150(j) to not accept an anatomical gift and to not remove or take their daughter's organs and tissue.

40.     Pursuant to California Health and Safety Code Section 7150.S0(j), Defendants "shall not accept an anatomical gift if the person knows that the gift was not effectively made .. " LOMA LINDA knew that a gift of Plaintiff's baby's organs and tissue was never effectively made because LOMA LINDA was aware that Plaintiff nor father did not authorize and objected to making any such anatomical gift of their daughter's  organs and tissue.

## FIRST CAUSE OF ACTION

### EMERGENCY MEDICAL TREATMENT & LABOR ACT VIOLATION FOR FAILURE TO PERFORM AN EMERGENCY MEDICAL SCREENING AND DISPARATE MEDICAL SCREENING

### (42 U.S.C. 1395DD)

### (BY PLAINTIFF AGAINST HI-DESERT AND DOES 1-10)

41.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

42.     EMTALA imposes a mandatory medical screening requirement as follows, "in the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists." 42 U.S.C. 1395dd(a).

FIRST AMENDED COMPLAINT

43.    On information and belief, Defendant HI-DESERT owns and operates the Hi-Desert Medical Center and Loma Linda University Medical Center, which is a hospital that has an emergency department and is a Medicare participating hospital and participates in the CalOPTIMA program.

44.    Plaintiff visited the emergency department of Defendant HI-DESERT and made a request for a medical screening examination of an emergency medical condition.

45.    Rather than providing the timely emergency medical examination that Plaintiff requested and urgently needed, HI-DESERT's employees or agents directed Plaintiff go to Defendant LOMA LINDA.  Plaintiff followed this directive and travelled approximately 73 miles to Defendant LOMA LINDA. Plaintiff is informed and believes and thereon alleges that HI-DESERT's failure to provide the requested emergency medical screening is a violation of EMTALA.

46.    Moreover, on information and belief, the emergency medical screening that Plaintiff eventually received was inadequate and subjected her to disparate treatment as it provided Plaintiff with a screening process that was not comparable to the screening process used for other patients presenting to the same emergency department with similar symptoms.

47.    Plaintiff is informed and believes and thereon alleges that she received a disparate medical screening and treatment process which directly and proximately caused Plaintiff's injuries as set forth above. If Plaintiff had instead received a comparable screening process as used for other patients presenting to the same emergency department with similar symptoms and complaints, then her injuries would have been avoided.

48.    Therefore, under 42 U.S.C. § 1395dd(d)(2)(A), Plaintiff is entitled to damages in an amount to be proven at the trial of this matter and is entitled to such equitable relief as is appropriate.

///

///

## SECOND CAUSE OF ACTION

**FAILURE TO PROVIDE EMERGENCY MEDICAL CARE AND DISPARATE CARE IN VIOLATION OF HEALTH AND SAFETY CODE § 1317 ET SEQ. (BY PLAINTIFF AGAINST HI-DESERT AND DOES 1-10)**

49.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

50.    The California Health and Safety Code provides that "Emergency services and care shall be provided to any person requesting the services or care, or for whom services or care is requested, for any condition in which the person is in danger of loss of life, or serious injury or illness, at any health facility licensed under this chapter that maintains and operates an emergency department to provide emergency services to the public when the health facility has appropriate facilities and qualified personnel available to provide the services or care." Cal. Health & Safety Code § 1317(a).

51.    HI-DESERT is a health care facility within the meaning of Cal. Health & Safety Code § 1317(a) and it has an emergency department that provides emergency services to the public and has facilities and personnel available to provide services or care.

52.    Plaintiff is an individual and she visited the emergency department of Hi-Desert Medical Center and made a request for emergency medical services and care for treatment of an emergency medical condition that placed her in danger of loss of life or serious injury or illness.

53.    Rather than providing the timely emergency medical care that Plaintiff requested and urgently needed, HI-DESERT employees or agents directed Plaintiff to travel to LOMA LINDA. Plaintiff followed this suggestion and travelled over 70 miles to LOMA LINDA. HI-DESERT's failure to provide the requested emergency medical care while in distress is a violation of Cal. Health & Safety Code § 1317(a).

54.    Moreover, on information and belief, the emergency medical care that Plaintiff received was inadequate and subjected her to disparate treatment as it provided

Plaintiff with medical care that was not comparable to the to the medical care provided to other patients presenting to the same emergency department with similar symptoms.

55.    Plaintiff is informed and believes and thereon alleges that she received disparate medical care which directly and proximately caused Plaintiff's injuries as set forth above. If Plaintiff had instead received comparable medical care as provided to other patients presenting to the same emergency department with similar symptoms, then her injuries would have been avoided.

56.    Therefore, Plaintiff is entitled to damages in an amount to be proven at the trial of this matter, an award of attorneys' fees and other appropriate relief. Cal. Health & Safety Code § 1317.6(j).

## THIRD CAUSE OF ACTION
### PROFESSIONAL NEGLIGENCE
### (BY PLAINTIFF AGAINST HI-DESERT AND DOES 1-10)

57.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

58.    At all times relevant, Defendants were physicians or employed physicians licensed to practice medicine under the laws of the State of California and were engaged in the practice of medicine in San Bernardino County.

59.    On June 6, 2020, Jennifer Berg presented to HI-DESERT with concerns about her pregnancy. Ms. Berg had been diagnosed with a high-risk pregnancy. As a result, Defendants owed Ms. Berg a duty to use such skill, prudence, and diligence as other members of their profession commonly possess and exercise.

60.    On June 6, 2020, Plaintiff is informed and believes, and thereon alleges that Defendants negligently treated Ms. Berg in a manner below the degree of skill, prudence, and diligence commonly possessed and exercised by members of their community.

61.    During all periods of time during which Plaintiff was a patient of Defendants, the Defendants, and each of them, agreed to perform and undertook to perform for Plaintiff, services necessary for her care, which included, but was not limited

to, observation, examination, evaluation, diagnosis, care and treatment, and in so doing, the Defendants, and each of them, established a relationship with Plaintiff, giving rise to each Defendants' duty to her to provide skillful management of her health condition, including but not limited to observation, evaluation, examination, diagnosis, care and treatment of Plaintiff.

62.    Defendants and each of them breached their duty to Plaintiff, to provide skillful management of her health condition, including but not limited to observation, examination, diagnosis, surgery, emergency care and treatment.

63.    At all times herein mentioned, Defendants and each of them so negligently and carelessly cared for, treated and rendered medical services upon the person and body of Plaintiff, and so negligently and carelessly managed, controlled and conducted their services, activities and supervision in connection with her care and treatment that as a direct and proximate result thereof Plaintiff, was caused to and did suffer the injuries herein alleged.

64.    During said periods of time herein above alleged, Defendants and each of them, were negligent, careless and unskillful in their management of the health of Plaintiff, including but not limited to the staffing, observation, examination, diagnosis, surgery, emergency care and treatment that were or should have been provided to Plaintiff.

65.    The negligence of Defendants and each of them, includes but is not limited to the following: (1) negligent staffing of HI-DESERT, which is a designated Level II Trauma Center by California Emergency Medical Services; (2) negligent treatment of Plaintiff, by failing to perform immediate care because of the symptoms that she presented with was an unreasonable danger to her that Defendants knew of or should have known of; (3) failure to evaluate, diagnose, manage, and treat Plaintiff; (4) negligent failure to render appropriate and complete treatment of Plaintiff; (5) negligent failure to undertake appropriate courses of action; and (5) medical and administrative abandonment of Plaintiff.

66.    Further, during said periods of time, Defendants, and each of them, did negligently select, review and supervise their medical staff.

67.    As a direct and legal result of the aforesaid negligence, carelessness and unskillfulness of Defendants, and each of them, Plaintiff, suffered grave physical and emotional injuries including pain and suffering. Plaintiff is informed and believes and therefore alleges that said injuries would not have occurred if not for the negligence of Defendants.

68.    As a further direct and legal result of the aforesaid negligence, carelessness and unskillfulness of Defendants, and each of them, Plaintiff has incurred loss of earnings and loss of earning capacity.

69.    As a further, direct and legal result of said negligence, carelessness and unskillfulness of the Defendants, and each of them, Plaintiff is entitled to recover prejudgment interest under California Code of Civil Procedure § 998 and California Civil Code § 3291.

70.    As a proximate result Defendants' professional negligence, Plaintiff suffered through the death of her unborn child, along with serious physical pain, emotional distress and suffering.

71.    As a further proximate result of Defendants' professional negligence, Plaintiff has incurred and will continue to incur medical, hospital, and related expenses.

72.    Plaintiff is entitled to damages in an amount to be proven at the trial of this matter and is entitled to such equitable relief as is appropriate.

73.    Plaintiff first discovered Defendants' medical malpractice on June 6, 2020.

74.    On June 2, 2021, pursuant to Code of Civil Procedure section 364, Plaintiff's counsel served Defendants notice of intention to commence action.

///

///

FIRST AMENDED COMPLAINT

# FOURTH CAUSE OF ACTION

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

## (BY PLAINTIFF AGAINST LOMA LINDA AND DOES 1-10)

75.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

76.    Defendants had a special duty to the Plaintiff to care for the remains of her child by the very nature of the services they provide. Defendants' breach of this duty caused severe emotional distress to Plaintiff.

77.    Defendant assumed a duty to the Plaintiff thereby creating a special relationship obligating them to perform those services in the dignified and respectful manner the Plaintiff expected from Defendants. Plaintiff suffered severe emotional distress when Defendants grossly mishandled and mistreated the remains of Plaintiff's daughter in ways unauthorized by Plaintiff, which were contrary to the wishes of the Plaintiff.

78.    Defendants' actions were not only a substantial factor in causing the severe emotional distress suffered by Plaintiff, they were the only factor causing the severe emotional distress suffered by Plaintiff resulting from egregious mistreatment her child's remains.

79.    The emotional devastation suffered by Plaintiff is undeniable. Plaintiff has described the pain as feelings of horror, anger, humiliation, disrespect, emotional devastation, constant nightmares, ongoing feelings of being violated, anxiety attacks, trouble sleeping, difficulty concentrating, unbearable mental anguish and pain, failure to grieve or recover, a sense of failure to her child, and so much turmoil.

80.    No reasonable person, normally constituted, would be able to cope with the type of mental stress and anguish caused by the present actions of the Defendants. Defendants' conduct as described herein was extreme and outrageous, and was so extreme as to exceed all bounds of that usually tolerated in a civilized society.

81.    Plaintiff suffered and continues to suffer from severe or extreme emotional distress, which was actually and proximately caused by the Defendants' outrageous conduct as set for herein.

82.    Plaintiff is entitled to damages in an amount to be proven at the trial of this matter and is entitled to such equitable relief as is appropriate.

## FIFTH CAUSE OF ACTION

### NEGLIGENCE

### (BY PLAINTIFF AGAINST LOMA LINDA AND DOES 1-10)

83.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

84.     By accepting the care, custody and control of the remains of Ms. Berg's child, Defendants undertook a duty of care to Plaintiff. Defendants' duty to Plaintiff included but was not limited to the following:

a.    Not to desecrate human remains;

b.    Not to lose or harvest body parts of the human remains;

c.    Not to intentionally, recklessly, and/or negligently misinform Plaintiff as to the state and condition of human remains;

d.    Not to intentionally, recklessly, and/or negligently publish, disseminate, circulate and/or place before the public, either directly or indirectly, statements that were untrue, deceptive and/or misleading regarding the business patterns and practices regarding human remains;

e.    To handle human remains in a proper and dignified manner;

f.    To hire and retain persons qualified and capable of providing proper care of human remains;

g.    To properly supervise their employees and agents and make sure they were using reasonable care in providing appropriate care of human remains; and

h.    To correct the numerous problems discussed in this complaint after Defendants knew or should have known of the problems.

FIRST AMENDED COMPLAINT

85.    Defendants breached each of the above duties, and were negligent by failing to use reasonable care in virtually all aspects, including but not limited to those set forth below:

i.    Desecrating human remains;

j.    Losing and harvesting body parts of human remains;

k.    Intentionally, recklessly, and/or negligently misinforming Plaintiff as to the state and condition of human remains;

l.    Intentionally, recklessly, and/or negligently publishing, disseminating, circulating and/or placing before the public, either directly or indirectly, statements that were untrue, deceptive and/or misleading regarding the status of human remains;

m.    Failing to use reasonable care when handling human remains;

n.    Handling human remains in an improper and undignified manner;

o.    Hiring and retaining persons not qualified and not capable of providing proper handling of human remains;

p.    Not properly supervising their employees and agents and making sure they were using reasonable care when handling human remains; and

q.    Not correcting the numerous problems identified in this complaint after Defendants knew or should have known of the problem.

86.    Defendants knew, should have known or could reasonably foresee that their wrongful acts and omissions would injure the Plaintiff.

87.    Defendants' conduct as described herein was extreme and outrageous, and was so extreme as to exceed all bounds of that usually tolerated in a civilized society.

88.    Plaintiff is suffering from severe or extreme emotional distress, and Defendants' negligence was a substantial factor in causing Plaintiff's severe or extreme emotional distress.

89.    As a direct and proximate result of the negligence of Defendants, Plaintiff suffered and continues to suffer the economic and non-economic damages.

90.     Defendants' actions were not only a substantial factor in causing the severe emotional distress suffered by Plaintiff, they were the only factor causing the severe emotional distress suffered by Plaintiff resulting from egregious mistreatment her child's remains.

91.     The emotional devastation suffered by Plaintiff is undeniable. Plaintiff has describe the pain as feelings of horror, anger, humiliation, disrespect, emotional devastation, constant nightmares, ongoing feelings of being violated, anxiety attacks, trouble sleeping, difficulty concentrating, unbearable mental anguish and pain, failure to grieve or recover, a sense of failure to her child, and so much turmoil.

92.     Defendants' failure to use reasonable care and their negligence in this case amount to outrageous behavior that is not tolerated in our civilized society and community.

93.     Defendants' acts and omissions amount to gross negligence tantamount to willful, wanton, and reckless conduct against the interests of the Plaintiff.

94.     Defendants knew or should have known that their serious failure to use reasonable care herein would result in damage to Plaintiff.

95.     Plaintiff is entitled to damages in an amount to be proven at the trial of this matter and is entitled to such equitable relief as is appropriate.

## SIXTH CAUSE OF ACTION

### NEGLIGENCE PER SE

### (BY PLAINTIFF AGAINST LOMA LINDA AND DOES 1-10)

96.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

97.     California statues and policies in effect at all times relevant herein, including but not limited to Health and Safety Code §§ 7100, 7051 and 7052, and Penal Code §§ 31 and 182 prohibit the conduct Defendants engaged in, and were designed to ensure that the remains of Ms. Berg's daughter were handled in an appropriate and dignified fashion and in accordance with the wishes of Plaintiff.

98.    The statutes and policies set forth above were designed to protect Plaintiff.

99.    By the conduct set forth above, Defendants, and each of them conspired to, and aided and abetted the violation of, and violated Health and Safety Code §§7100, 7051 and 7052, and Penal Code §§31 and 182.

100.    The emotional devastation suffered by Plaintiff is undeniable. Plaintiff has described the pain as feelings of horror, anger, humiliation, disrespect, emotional devastation, constant nightmares, ongoing feelings of being violated, anxiety attacks, trouble sleeping, difficulty concentrating, unbearable mental anguish and pain, failure to grieve or recover, a sense of failure to her child, and so much turmoil.

101.    As a direct and proximate result, Plaintiff has suffered and will continue to suffer extreme economic, physical and personal injuries and emotional distress in a sum to be proven at trial.

102.    Plaintiff is entitled to damages in an amount to be proven at the trial of this matter and is entitled to such equitable relief as is appropriate.

<u>SEVENTH CAUSE OF ACTION</u>

**TORTIOUS INTERFERENCE WITH RIGHT TO DISPOSE OF REMAINS**

**(BY PLAINTIFF AGAINST LOMA LINDA AND DOES 1-10)**

103.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

104.    By reason of the relationship of Plaintiff and decedent baby, Plaintiff was at all times herein mentioned entitled to control her respective decedent baby's remains.

105.    Defendants have intentionally, willfully, recklessly and/or negligently interfered with Plaintiff's rights to control the remains of her decedent, contrary to the wishes and beliefs of Plaintiff by committing the acts described herein.

106.    This interference was intentional, willful, reckless and/or negligent in that Defendants' actions herein are illegal, improper, and immoral and in that Defendants failed to inform Plaintiff of the acts described herein prior to or after committing the tortious activity.

107.   Defendants' improper disposition and mutilation Plaintiff's baby's human remains is and was repugnant, offensive, and insulting to Plaintiff, to her beliefs, and to a civilized society, and learning of Defendants' conduct described herein caused and continues to cause the Plaintiff extreme mental anguish and disgust and disturbed their peace of mind causing her to become permanently sick in mind and body.

108.   As a direct and proximate result of the intentional, willful, reckless, and/or negligent acts of Defendants, Plaintiff suffered and continue to suffer the economic and non-economic damages.

109.   Plaintiff is entitled to damages in an amount to be proven at the trial of this matter and is entitled to such equitable relief as is appropriate.

110.   Defendants undertook the aforesaid illegal acts intentionally or with conscious disregard of the rights of Plaintiff, and did so with fraud, oppression and/or malice. This despicable conduct subjected Plaintiff to cruel and unjust hardship so as to justify an award of punitive damages in an amount sufficient to deter such wrongful conduct in the future. Therefore, Plaintiff is also entitled to punitive damages against Defendants in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

### TORTIOUS INTERFERENCE WITH DEAD BODY
### (BY PLAINTIFF AGAINST LOMA LINDA AND DOES 1-10)

111.   Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

112.   Defendants owed Plaintiff a duty to exercise reasonable and proper care when handling the remains of Plaintiff's child to whom Plaintiff was entitled to immediate custody and possession of said remains. The duty includes, but is not limited to, those set forth above.

113.   Defendants' conduct, including but not limited to Defendants mutilation and desecration of Plaintiff's baby's remains, was malicious and intentional. Defendants' conduct demonstrates an entire want of care or attention to duty and great indifference to

the human remains and property rights of others. Defendants' conduct is outrageous and goes beyond all bounds of decency in a civilized society.

114.  Defendants' conduct has directly and proximately caused and continues to cause economic and non-economic damages to Plaintiff. Plaintiff has and will continue to suffer extreme mental anguish, distress and suffering.

115.  Defendants' could foresee that their wrongful acts and omissions would damage the Plaintiff in the manner set forth above.

116.  Plaintiff is entitled to damages in an amount to be proven at the trial of this matter and is entitled to such equitable relief as is appropriate.

117.  Defendants undertook the aforesaid illegal acts intentionally or with conscious disregard of the rights of Plaintiff, and did so with fraud, oppression and/or malice. This despicable conduct subjected Plaintiff to cruel and unjust hardship so as to justify an award of punitive damages in an amount sufficient to deter such wrongful conduct in the future. Therefore, Plaintiff is also entitled to punitive damages against Defendants in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY/LACK OF INFORMED CONSENT
### (BY PLAINTIFF AGAINST LOMA LINDA AND DOES 1-10)

118.  Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

119.  Defendants' owed Plaintiff a duty to exercise reasonable and proper care when handling the remains of Plaintiff's child to whom Plaintiff was entitled to immediate custody and possession of the remains. The duty includes, but is not limited to those set forth above.

120.  Defendants' conduct, including but not limited to Defendants' desecration and mutilation of Plaintiff's baby's remains, was malicious and intentional. Defendants' conduct demonstrates an entire want of care or attention to duty and great indifference to

the remains, property and property rights of others. Defendants' conduct is outrageous and goes beyond all bounds of decency in a civilized society.

121.   Defendants had a fiduciary duty to disclose material facts to Plaintiff, including, but not limited to, the full extent of any economic interests that defendants had in Plaintiff's baby's human remains.

122.   Defendants concealed and failed to disclose to plaintiff the full extent of the economic interests that defendants had in the baby's remains.

123.   By concealing and failing to disclose to Plaintiff the full extent of the economic interests that defendants had in Plaintiff's baby's remains, defendants breached their fiduciary duties to plaintiff and improperly failed to obtain plaintiff's informed consent.

124.   Defendants' conduct has directly and proximately caused and continues to cause economic and non-economic damages to Plaintiff. Plaintiff has and will continue to suffer extreme mental anguish, distress and suffering.

125.   Defendants could foresee that their wrongful acts and omissions would damage the Plaintiff in the manner set forth above.

126.   Plaintiff is entitled to damages in an amount to be proven at the trial of this matter and is entitled to such equitable relief as is appropriate.

127.   Defendants undertook the aforesaid illegal acts intentionally or with conscious disregard of the rights of Plaintiff, and did so with fraud, oppression and/or malice. This despicable conduct subjected Plaintiff to cruel and unjust hardship so as to justify an award of punitive damages in an amount sufficient to deter such wrongful conduct in the future. Therefore, Plaintiff is also entitled to punitive damages against Defendants in an amount to be determined at trial.

///

///

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment as follows:

1.    General damages to Plaintiff in an amount that is yet to be ascertained;

2.    Special and consequential damages to Plaintiff in an amount that is yet to be ascertained;

3.    Statutory damages to Plaintiff in an amount that is yet to be ascertained;

4.    Statutory Civil penalties in an amount that is yet to be ascertained;

5.    Attorneys' fees and costs, as provided by statute;

6.    Disgorgement of wrongful profits;

7.    Punitive damages in an amount sufficient to punish the Defendants and to deter them from engaging in wrongful conduct in the future;

8.    Interest and costs of suit incurred herein; and

9.    Such other relief as the Court finds just and proper.

SKAPIK LAW GROUP

Dated: February 3, 2022                    By:    *Eric C. Morris*
                                                   Eric C. Morris
                                                   Mark J. Skapik
                                                   Geralyn L. Skapik
                                                   Blair J. Berkley
                                                   Matthew T. Falkenstein
                                                   Attorneys for Plaintiff
                                                   JENNIFER BERG

FIRST AMENDED COMPLAINT

# **JURY TRIAL DEMAND**

Under Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury as to all claims subject to trial by jury.


SKAPIK LAW GROUP


Dated: February 3, 2022                    By:    *Eric C. Morris*
Eric C. Morris
Mark J. Skapik
Geralyn L. Skapik
Blair J. Berkley
Matthew T. Falkenstein
Attorneys for Plaintiff
JENNIFER BERG

-25-

FIRST AMENDED COMPLAINT